Filed 5/3/22  Eitani v. Simayof CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| LISA KROGER EITANI,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADI SIMAYOF et al.,<br><br>    Defendants and Appellants. | A159547<br><br>(San Francisco County Super. Ct.<br>  No. CGC-12519074) |

Defendants Adi Simayof (Simayof) and Sarit Simayof-Cohen (Cohen) appeal the trial court's order entering judgment pursuant to Code of Civil Procedure section 664.6[1] against each defendant, and various companies associated with defendants, based on written settlement agreements which Simayof and Cohen separately entered into with plaintiff Lisa Kroger Eitani. Defendants argue that the evidence presented to the trial court was insufficient to support entry of judgment against Simayof; that Cohen's duty to pay money to Eitani pursuant to the settlement agreement never arose; that the settlement agreement between Eitani and Cohen was never intended to involve entry of judgment against Cohen; and, if entry of judgment against

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

Cohen was proper, the trial court was required to reduce the amount of the judgment to reflect payments Simayof made to Eitani. Simayof also attempts to raise a new issue, which he did not raise in the trial court, namely, that he and Eitani did not enter into a binding contract. Finding no error, we affirm.

## BACKGROUND

### A. *Eitani Sues Simayof and Cohen for Breach of Contract*

In 2008, Eitani, acting through her company Kroger Gems, entered into a series of consignment agreements with SIMSF, Inc., a retail jewelry company owned and operated by Simayof. Pursuant to the consignment agreements, Eitani provided Simayof with loose diamonds valued at approximately $462,000; Simayof agreed to pay for the diamonds when he sold them or return the diamonds to Eitani. Cohen, an attorney licensed to practice law in California, is Simayof's sister. In 2010, Eitani accepted post-dated checks for $170,000, executed by Cohen in her capacity as chief executive officer of World of Charms (WOC), a Nevada corporation, and provided additional diamonds to Simayof on consignment in reliance on these checks. SIMSF, Inc. failed to either pay Eitani or return the diamonds to her.

Eitani filed suit in the Superior Court for the City and County of San Francisco on March 12, 2012, for conversion, fraud, breach of fiduciary duty, common counts, and breach of contract against Simayof, as an individual, and against the following businesses associated with Simayof: SIMSF, Inc.; Simayof, Inc.; GISF, Inc.; and YDAF, Inc. (collectively, Simayof defendants). Eitani also named Cohen, as an individual, and WOC as defendants (collectively, WOC defendants). Eitani alleged that each of the named defendants was the alter ego of the others.

2

**B. *Eitani Settles with the Simayof Defendants***

On October 13, 2013, Eitani entered into a written settlement agreement with the Simayof defendants entitled "Stipulation For Judgment" (Simayof stipulation). Eitani agreed that she would not request entry of judgment on the stipulation nor execute on the judgment provided the Simayof defendants paid her $462,000 over nine years as follows:

(a) No payments due for the initial 18 months;

(b) Commencing April 4, 2015, six monthly payments of $2,500;

(c) Commencing October 4, 2015, 12 monthly payments of $3,500;

(d) Commencing October 4, 2016, 30 monthly payments of $5,400; and

(e) Commencing May 4, 2019, 42 monthly payments of $5,785.72 until the balance was paid in full.

Eitani agreed to provide the Simayof defendants with written notice of default. If the default was not cured within 10 days after written notice, judgment "may be entered against [Simayof] Defendants for $462,000, less credits for payments made, and a Writ of Execution may issue without notice or hearing." The parties agreed that "[t]his Stipulation contains the entire agreement between the parties with regard to its subject matter," and that it could not be amended "except by a writing duly executed by the parties." The parties further agreed that the court shall retain jurisdiction to enforce the terms of the settlement.

The Simayof stipulation allowed Simayof to request modification of the payment terms annually under the following conditions:

"IT IS FURTHER AGREED that SIMAYOF may request a modification of the payment amount and Plaintiff may agree to such modification upon a verified showing of SIMAYOF's financial difficulties, which proof shall include any company owned or operated by SIMAYOF, or in which SIMAYOF are [*sic*] an officer or holds a financial interest. Any such request can be

3

made on an annual basis and shall be made no later than the September 1 preceding the date the payments are to begin."

## C. *Eitani Settles with the WOC Defendants*

On November 18, 2013, Eitani entered into a written settlement agreement with the WOC defendants entitled "Stipulation." The parties agreed to the following terms:

"IT IS HEREBY STIPULATED that WOC will personally guarantee payment by SIMAYOF in the amount of $135,000, and execute the attached personal guarantee. Such guarantee shall remain in effect until Plaintiff receives $200,000 from . . . SIMAYOF pursuant to a Stipulation for Judgment entered into with SIMAYOF. Upon receipt and clearance of payment(s) in the amount of $200,000, Plaintiff will file a dismissal with prejudice as to WOC only.[2]

"IT IS HEREBY STIPULATED by and between Plaintiff and WOC . . . that in the event of any default on the payments by SIMAYOF, not cured within ten (10) days after written notice to WOC, WOC shall be obligated to pay Plaintiff $135,000.00, less credit for payments made."

The parties further agreed that: (1) the stipulation sets forth their entire agreement; (2) the stipulation would not be filed with the court until there was a default in performance; and (3) the court would retain jurisdiction over the parties to enforce the stipulation until the stipulation was fully performed.

---

[2] Confusingly, the parties also agreed that Eitani would file a request to dismiss the case against the WOC defendants without prejudice within 15 days of receiving the signed stipulation and personal guarantee. The timing and method of dismissal is not an issue which has been raised on appeal.

**D.** *History of Performance Pursuant to the Stipulations*

### i. *Simayof Fails to Make the $2,500 Payment Due on July 4, 2015*

Simayof timely made the $2,500 payments to Eitani which were due on April 4, 2015, May 4, 2015, and June 4, 2015. On July 6, 2015, Simayof told Eitani's attorney that he was experiencing temporary financial difficulties; he asked for an immediate suspension of his obligation to make payments for three months. Eitani's attorney denied this request, and thereafter sent written notice of default to defendants on July 9, 2015. The 10 days in which to cure the default expired on July 19, 2015 without Simayof or Cohen taking any steps to attempt to cure the default. Simayof renewed his request to modify the payment plan on July 19, 2015. Eitani's attorneys told Simayof that if he submitted verified proof of his financial condition, as required by the Simayof stipulation, they would review it. Simayof did not provide Eitani with any financial documents in support of his request for modification prior to the September 1, 2015 deadline.

### ii. *Eitani's Initial Applications for Entry of Judgment in 2015 and 2016 Are Denied*

On October 14, 2015, Eitani submitted an ex parte application for entry of judgment pursuant to the stipulations. The court denied the ex parte application without prejudice to Eitani filing a noticed motion for entry of judgment pursuant to section 664.6.

Eitani filed a noticed motion on March 7, 2016, seeking entry of judgment against the Simayof defendants in the sum of $454,500, and against the WOC defendants in the sum of $127,500. The court denied the motion on May 5, 2016, finding that (1) Simayof's right to request modification of the payment schedule was a material term of the Simayof stipulation; (2) Eitani had a duty to "act reasonably on Mr. Simayof's request

5

for modification of the payment schedule," and her attorney's emails summarily denying Simayof's request that the parties discuss modification of the payment schedule were unreasonable; and (3) Eitani's failure to reasonably consider Simayof's July 6, 2015 request for modification "precludes her from establishing the required element of her claim for breach of the stipulation that she performed all the conditions required by the stipulation to be performed by her." The court held that Cohen had no duty to pay Eitani "until there is a determination that the payment obligations in the [Simayof stipulation] have not been met[.]"

### iii. *Eitani and Simayof Negotiate Simayof's Request to Modify the Payment Schedule*

On May 6, 2016, Simayof provided some financial information to Eitani's attorneys in an effort to substantiate his contention that he was experiencing financial difficulties which warranted modification of the payment schedule. Eitani's attorneys asked Simayof to provide additional information. In June 2016, Simayof asked to reduce his payments from the $3,500 per month required by the Simayof stipulation to $500 per month effective July 1, 2016. Simayof submitted additional financial records in support of his request. On August 25, 2016, Eitani's attorneys notified Simayof that his financial data was still incomplete, and that the documents they had reviewed did not support a modification to $500 per month.

One of Eitani's attorneys met with Simayof on October 5, 2016; she reviewed documents Simayof produced and questioned him about his finances. Eitani thereafter agreed to accept Simayof's offer to make payments of $500 per month, but only on the condition that Simayof provide a security interest in real properties owned by Simayof and Cohen in exchange for the reduced payment plan. Simayof did not agree to provide the security interest and did not remit payment of $500 or in any amount. The

impasse between the parties continued through April of 2017, with Simayof demanding that Eitani accept reduced payments of $500 per month and Eitani declining to reduce the payments until Simayof verified his financial data and/or provided a security interest in consideration of the payment reduction.

### iv. *Eitani Renews Her Application for Entry of Judgment in 2017*

On March 24, 2017, Eitani filed a second noticed motion for entry of judgment against the Simayof defendants and the WOC defendants. On April 25, 2017, the court again denied the motion on the ground that Eitani had not demonstrated that she reasonably considered Simayof's modification request. The court found that Eitani's request for a security interest in real property owned by Simayof and Cohen in connection with a payment reduction "was unreasonable as a matter of law in the instant circumstance." In dictum, the court "suggested" that "it's in [Simayof's] best interest to provide the financial documents and act in good faith in terms of doing that, to make what payments you can make."

### v. *Eitani Resumes Negotiations with Simayof Regarding His Request to Modify the Payment Schedule*

After the court denied Eitani's second noticed motion to enter judgment against defendants, Eitani's attorneys and Simayof resumed negotiations about whether the Simayof stipulation should be modified and, if so, on what terms. Simayof began sending payments of $500 per month to Eitani's attorneys in May 2017. Simayof sent the checks despite being informed by Eitani's attorneys that Eitani would not agree to modify the payment schedule "without a set payment proposal from you" and unless Simayof provided complete, verified financial data that supported a reduction of payments to $500 per month. Eitani's attorneys explained to Simayof that a

7

financial statement or an income and expense declaration signed under penalty of perjury would satisfy their demand for verified financial data.

On September 5, 2017, Simayof informed Eitani's attorneys: "As you know, a modification agreement is already in place . . . . In October of 2016, your client has agreed to a $500 a month payment structure modification." Eitani's attorneys promptly responded: "[N]o agreement to modify your obligations with respect to the October 2013 Settlement Agreement was ever entered into. Our client never agreed to a $500 a month payment structure— not in October of 2016 nor at any other time." "In addition, while the $500 payments you have been sending recently have been received by our office, they have been never cashed [*sic*] nor 'applied' as your email states."

For the next 18 months, the negotiations continued in this vein: Eitani's attorneys repeatedly demanded signed copies of Simayof's tax returns and verified financial data, while Simayof reiterated that he had already provided everything that Eitani's attorneys had requested. Simayof continued to insist that Eitani had agreed to accept $500 per month even after Eitani's attorneys returned Simayof's uncashed checks to him on October 5, 2017. During a face-to-face meeting with one of Eitani's attorneys on May 22, 2018, Simayof admitted that he was not able to provide wage stubs or other documents verifying the amount of money he had recently earned as a "consultant" for Cohen because Cohen had paid him in cash.

On March 29, 2019, Eitani's attorneys informed Simayof that they intended to file another motion to enter judgment on the Simayof stipulation. For the next several months, the parties exchanged proposals to resolve their dispute. In April 2019, Simayof offered $100,000, paid in monthly installments of $8,000, in full settlement of what he owed Eitani. Eitani counter-offered that she would accept $350,000 in full settlement of all issues

8

between the parties or, alternatively, she would accept monthly payments of $4,628.57 until the $462,000 was paid in full. The parties were unable to reach an agreement.

## E. *The Trial Court Grants Eitani's Motion to Enter Judgment Against Defendants*

Eitani filed her third motion seeking to enter judgment against defendants on October 11, 2019. In the motion, Eitani painstakingly outlined the chronology of the case and described the extensive negotiations between Eitani and Simayof regarding modification of Simayof's payment schedule which had occurred since 2017.

In opposition, Simayof cited the two prior trial court rulings to support his contention that Eitani had not acted reasonably in rejecting his request to modify the payment schedule. Alternatively, Simayof argued that Eitani had agreed to accept $500 per month because the financial data he provided proved that $500 was all he could afford.[3] Simayof also offered extrinsic evidence in an attempt to demonstrate that Eitani had made assurances and promises to him, which are not contained in the Simayof stipulation.[4]

---

[3] At oral argument on the motion, Simayof appeared to relinquish the argument that Eitani had agreed to modify the payments to $500 per month:

"The Court: There certainly has never been a written modification, which is required by these agreements, that would modify the stipulation or provide for any different payment provision.

"Cohen: Your Honor, you're one hundred percent correct."

[4] For example, Simayof claimed that he had shared his personal financial data with Eitani and her attorneys during the 2013 settlement negotiations, essentially putting them on notice that his financial condition was precarious. He claimed to have discussed with Eitani in 2013 his financial projections for a start-up he expected to generate income in the future. Simayof also asserted that Eitani and her attorneys had verbally represented that Eitani *would agree* to modify the payment to one he could

9

The motion was argued on November 22, 2019. The trial court indicated that it was familiar with the voluminous record[5] and was inclined to adopt its tentative ruling to grant the motions. After hearing and considering oral argument, the trial court granted the motion to enter judgment on each stipulation. The trial court made the following factual findings:

"The evidence indicates that Adi Simayof breached the stipulation for entry of judgment by failing to make timely payments. Mr. Simayof failed to provide Plaintiff with sufficient financial information to warrant a modification of the payment plan to $500.00 per month. Evidence further shows that Mr. Simayof did not properly document all of the funds he was receiving. Entry of judgment against WOC is appropriate because Mr. Sim[a]yof breached the stipulation and WOC agreed to guarantee $135,000 in payments . . . WOC's argument that it never received a notice of

---

afford, even though the Simayof stipulation states that Eitani's duty is simply to consider Simayof's request for a modification.

In her reply, Eitani states that Simayof did not share financial information during the 2013 settlement negotiations, nor was she aware from any source that Simayof expected to generate income from a start-up company. She maintained throughout the litigation that her obligation to consider a payment modification arose only if Simayof complied with the conditions set forth in the Simayof stipulation.

[5] The trial court stated: "I have a mountain of paperwork that you all have filed." When Cohen cited to the rulings on the first and second motions for judgment, the court replied: "I read them." In rendering its oral decision granting the motion, the court referenced the "considerable" amount of evidence it had reviewed. Defendants' accusation that the trial court "completely ignore[d]" defendants' evidence and argument is not supported by the record. (See also *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183 (*Hines*) [appellants must affirmatively show that the trial court refused to consider their arguments].)

default fails.  Eitani sent a notice of default to Ms. [Simayof]-Cohen on July 9, 2015, and February 17, 2017.  While the letters are not expressly addressed to World of Charms, Inc., Ms. [Simayof]-Cohen is an officer of that entity that signed the stipulation and she is also its attorney.”

Judgment was entered against each defendant on November 22, 2019.  Defendants filed a timely notice of appeal on December 11, 2019.

## DISCUSSION

### I. *Standard of Review*

#### A. *The Trial Court's Factual Findings Must Be Affirmed if Supported by Substantial Evidence*

“If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court . . . for settlement of the case . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement.  If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.”  (§ 664.6.)

Section 664.6 “was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit.”  (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.)  A trial judge hearing a motion pursuant to section 664.6 “ ‘may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment . . . .’ ”  (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.)  “A trial court's factual findings on a motion to enforce a settlement pursuant to section 664.6 are subject to limited appellate review and will not be disturbed if supported by substantial evidence.”  (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 790.)  Legal questions, such as the proper interpretation of section 664.6, or whether the granting of the motion satisfied the strict requirements of the statute, are reviewed de novo.  (*J.B.B.*

11

*Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 984; *Elnekave v. Via Dolce Homeowners Assn.* (2006) 142 Cal.App.4th 1193, 1198.)

**B.** ***It is Defendants' Burden to Affirmatively Demonstrate Error***

The judgments which are the subject of this appeal are presumed to be correct and it is defendants' burden to affirmatively demonstrate error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) In their opening brief, Simayof and Cohen repeatedly demand that this court make factual determinations,[6] reweigh the evidence and reassess the credibility of witnesses on appeal, functions that are exclusively within the province of the trier of fact. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.) " '[T]he Court of Appeal is not a second trier of fact." (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) "We do not retry cases on appeal and we do not substitute our discretion for that of the trial court." (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1276.)

" 'The rule is well established that a reviewing court must presume that the record contains evidence to support every finding of fact, and an appellant who contends that some particular finding is not supported is required to set forth in his brief a summary of the material evidence upon that issue.' " (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887) "We apply the substantial evidence standard to the record as a whole. It has long been established that an appellant must present in its brief all material evidence on the issue, not just the evidence that supports its position, and failure to so state the

---

[6] For example, the opening brief states: "Defendant Simayof is respectfully asking this court to review the financials that were submitted for review of the court under seal . . . . No reasonable person can conclude that Defendant Simayof can afford [the payments suggested by Eitani]." Simayof also argues a mixed issue of fact and law, which was not raised in the trial court, namely, whether the Simayof stipulation is void or voidable because the parties never had a "meeting of the minds" as to the modification clause.

evidence may be deemed a waiver of the substantial evidence challenge." (*Pilliod v. Monsanto Co.* (2021) 67 Cal.App.5th 591, 621.)

Eitani asserts that defendants' failure to provide an adequate record for this court's review, combined with their failure to accurately describe the evidence in the record, should be deemed a waiver of the substantial evidence argument. While we agree with Eitani "that [defendants] have 'shirked' their responsibility to set forth *all* the evidence, failed to discuss or analyze the contradictory evidence in their opening brief, and set forth only their version of the evidence," we nevertheless address the merits of Simayof and Cohens' arguments below.

## II. *The Trial Court's Decision to Enter Judgment Against Simayof is Consistent with Section 664.6 and is Supported by Substantial Evidence*

### A. *Simayof's Failure to Raise the Alleged Invalidity of the Simayof Stipulation in Opposition to Eitani's 2019 Motion to Enter Judgement Precludes Him from Arguing This Issue on Appeal*

Simayof correctly asserts that a settlement agreement is not valid or enforceable unless the parties have agreed to all material terms. (*Hines*, *supra*, 167 Cal.App.4th at p. 1182.) "An essential element of any [enforceable] contract is [mutual] consent." (*Weddington Productions*, *Inc.* v. *Flick*, *supra*, 60 Cal.App.4th at p. 811; see also Civ. Code, §§ 1580, 1636.) Simayof goes on to argue that Eitani and Simayof never reached a meeting of the minds on a material term of the settlement agreement, namely, whether Simayof is entitled to a modification of the payment plan in the event he experiences financial difficulties. Alternatively, he argues that Eitani "fraudulently induced" Simayof to sign the Simayof stipulation by verbally promising that she would modify the payment plan if Simayof experienced financial difficulties even though she had no intention of actually doing so. There are several problems with these arguments.

13

First, Simayof did not argue in the trial court that the parties had failed to reach a binding agreement in 2013. "It is elementary that questions not raised in the trial court will not be considered on appeal. [Citations.] Under this well settled rule a party is prohibited from asserting on appeal claims to relief not asserted or requested in the court below, and is prohibited from asserting matters of defense not there presented." (*Algeri v. Tonini* (1958) 159 Cal.App.2d 828, 832 [citing line of cases].)

Second, section 664.6 expressly authorizes the trial court to determine whether a settlement has occurred (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889; *Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 566.) This court is required to presume that the evidence supports the trial court's finding that the parties had reached a binding agreement. (See, e.g., *Hines*, *supra*, 167 Cal.App.4th at pp. 1182–1183.) If, as Simayof now argues, Simayof and Eitani had different understandings of the terms of the agreement, which prevented a "meeting of the minds," the trial court was in the best position to hear and decide the disputed factual issues. As discussed above, it is not the role of the appellate court to decide disputed factual issues.

Third, the record in this case contains ample evidence that Simayof considered the Simayof stipulation to be valid and enforceable. Simayof partially performed by making three payments of $2,500 in 2015. He also successfully asserted Eitani's duty under the agreement to reasonably evaluate his request to modify the payment schedule to defeat Eitani's first two motions to enter judgment pursuant to section 664.6. " 'Ordinarily, a party cannot accept the benefits of a judgment, in whole or in part, and then attack it by appeal. His conduct in taking any of its advantages while

14

seeking to reverse it is inconsistent, and the result is a waiver of the right.' " (*In re Marriage of Hasso* (1991) 229 Cal.App.3d 1174, 1179.)

For the reasons discussed above, we find that Simayof is precluded from arguing on appeal that the Simayof stipulation was not a valid agreement that could be entered as a judgment pursuant to section 664.6.

**B.** ***The Trial Court's Decision That Eitani Proved Each of the Conditions Precedent to Entry of Judgment is Supported by Substantial Evidence***

The parties agreed that judgment would not be entered upon the Simayof stipulation unless Simayof failed to make the payments required under the agreement, Eitani provided Simayof with a written notice of default, and Simayof failed to cure the default within 10 days. The trial court found that Eitani had proven each of these prerequisites to entry of judgment. The trial court's findings are amply supported by evidence in the record.

The primary point of contention throughout these proceedings is the degree to which each party complied with the clause that authorizes Simayof to request a modification of the payment schedule based on a verified showing of financial difficulties. On appeal, Simayof contests the trial court's findings that Simayof failed to support his request to modify the payment schedule with "verified financial data," and that Eitani acted reasonably and in good faith in considering and denying Simayof's request for modification. We find that the trial court's factual findings on each point are supported by substantial evidence.

As an initial matter, the trial court properly rejected Simayof's interpretation of the Simayof stipulation as requiring Eitani to reduce the payment schedule at Simayof's request if he claimed to be suffering from financial difficulties. "The court generally may not consider extrinsic

15

evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125–1126.) Here, Simayof's self-serving declaration was contrary to the clear and unambiguous terms of the Simayof stipulation, which required Eitani to consider modification of the payment schedule annually only if Simayof had submitted verified proof of financial difficulties prior to September 1 in any calendar year.

The evidence established that between July 2015 and October 2019, Simayof repeatedly requested to defer payments or reduce payments due to unspecified financial difficulties. Despite explicit and repeated demands, Simayof refused to produce "verified" financial data, that is, a financial statement and/or financial documents accompanied by an affidavit in which Simayof declared under penalty of perjury that the information was true and correct. It is true, as Simayof argued in the trial court and again on appeal, that over time he eventually produced copies of bank records, signed and unsigned tax records, and other types of financial data. The trial court correctly found that simply producing some financial data did not comply with the term of the Simayof stipulation, which required Simayof to make "a verified showing of Simayof's financial difficulties" in support of any request to modify the payment schedule.

The trial court's finding that Eitani acted reasonably in rejecting Simayof's demand to reduce payments is also supported by substantial evidence. Following the denial of Eitani's second motion to enter judgment, Eitani's attorneys understood that the trial court had set a "high bar," which required Eitani to negotiate Simayof's request for a modification of the payment schedule in good faith. The evidence demonstrated that between

2017 and 2019, the parties exhaustively negotiated whether the payment plan should be modified and if so, on what terms. This evidence supported the trial court's determination that Eitani had reasonably exercised her discretion to consider, and ultimately deny, Simayof's request.

### III. *The Trial Court's Decision to Enter Judgment Against the WOC Defendants is Consistent with Section 664.6 and is Supported by Substantial Evidence*

### A. *The Trial Court Properly Determined That the WOC Defendants and Eitani Entered into a Written Settlement Agreement Which is Enforceable as a Judgment*

Cohen represented herself and her brother Simayof throughout this litigation. She argues that the stipulation she negotiated with Eitani on behalf of the WOC defendants, unlike the Simayof stipulation, was never intended to be entered as a judgment.

On its face, section 664.6 requires only that "parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court . . . for settlement of the case . . . ." (§ 664.6, subd. (a).) The statute does not require the parties to reference entry of judgment in order for their settlement to be enforceable as a judgment. (See, e.g., *Hines, supra*, 167 Cal.App.4th at p. 1177; *In re Marriage of Hasso, supra*, 229 Cal.App.3d at pp. 1180–1185.) It is essential, however, that when a settlement calls for dismissal of an action, or when a case is actually dismissed, prior to dismissal, the parties ask the court to retain jurisdiction until such time as all of the terms of the settlement have been performed by the parties. (*Sayta v. Chu* (2017) 17 Cal.App.5th 960, 966.) The stipulation in this case expressly asks the court to retain jurisdiction until all terms have been performed, bringing the stipulation squarely within section 664.6.

17

**B.** *The Trial Court's Determination That the WOC Defendants'*
*Duty to Pay Was Triggered by Simayof's Default is Supported*
*by Substantial Evidence*

Cohen asserts that the trial court's findings in 2016 and 2017 that
"Simayof was not in default" are evidence that the trial court should have
relied upon in 2019 to find that the WOC defendants' duty to pay Eitani had
not yet arisen. Cohen misconstrues the trial court's 2016 and 2017 findings,
both of which focused on whether Eitani had established a condition
precedent to entry of judgment and never reached the question of whether
Simayof was in default.

In contrast, when squarely presented with the issue on November 22,
2019, the trial court found that Simayof's failure to make the required
payments, in the absence of an agreed-upon written modification of the
payment schedule, was a breach which triggered the WOC defendants' duty
to pay Eitani $135,000. As discussed above, the trial court's finding that
Simayof breached the Simayof stipulation is supported by substantial
evidence. So, too, are the trial court's findings that Cohen, as WOC's agent,
was provided with written notice of Simayof's default and failed to timely
cure the default. As Eitani points out, it is Simayof's failure to make the
payments required by the Simayof stipulation that triggers the WOC
defendants' duty to pay rather than, as Cohen asserts, a court determining
that Simayof is in default.[7]

Cohen further argues that in the event that judgment is entered
against the WOC defendants, they are entitled to set-offs against the

---

[7] To interpret either stipulation as requiring a contested evidentiary
hearing on whether Simayof was in default would undermine the summary
nature of entering judgment pursuant to section 664.6. (See, e.g., *Machado v.*
*Myers, supra,* 39 Cal.App.5th at p. 790 [statutory procedure for enforcing
settlement agreements is an "expeditious" alternative].)

18

$135,000 guarantee.  First, Cohen argues that the trial court erred by entering judgment for $135,000 because the WOC defendants are entitled to a $7,500 set off for the three payments Simayof made to Eitani in 2015. Cohen's second argument is that Eitani breached the stipulation when she refused to accept Simayof's offer of an emerald ring in lieu of the $2,500 payment required on July 4, 2015, and returned the $500 payments that Simayof had tendered because the WOC defendants would have been entitled to offset such payments against the $135,000 guarantee.  Neither contention is meritorious.

The stipulation provides that the WOC defendants will personally guarantee Simayof's payment to Eitani in the amount of $135,000.  "Such guarantee shall remain in effect until Plaintiff receives $200,000 from the [Simayof] Defendants."  "[I]n the event of any default on the payments by SIMAYOF, not cured within ten (10) days after written notice to WOC, WOC shall be obligated to pay Plaintiff $135,000.00, less credits for payments made."

Eitani interprets the stipulation as allowing the WOC defendants to offset any payments Cohen or WOC made to Eitani, not those made by Simayof.  According to Eitani, allowing the WOC defendants to offset payments made by Simayof contradicts the language that said defendants remain obligated to pay $135,000 until Simayof has paid Eitani at least $200,000:  The trial court agreed with Eitani's interpretation of the stipulation, as do we.

" ' "If interpretation of a stipulation is in order, the rules applied are those applied to the interpretation of contracts." ' "  (*Machado v. Myers, supra,* 39 Cal.App.5th at p. 792.) Under statutory rules of contract interpretation, the mutual intent of the parties must be inferred, if possible,

19

solely from the written terms of the contract. (Civ. Code, § 1639; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822.) "We consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation." (*American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1245.) "Contractual language is ambiguous if it is susceptible of more than one reasonable interpretation in the context of the [contract] as a whole." (*Ibid*.) "Whether contractual language is ambiguous is a question of law that we review de novo." (*Ibid*.) In cases of uncertainty, which are not resolved by application of the preceding rules, the ambiguous language should be interpreted most strongly against the party which caused the uncertainty to exist. (Civ. Code, § 1654; *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 248.)

While the stipulation is arguably ambiguous in failing to specify whether the WOC defendants are entitled to credits for payments they have made, Simayof has made, or both, the ambiguity is easily resolved by reading this clause in the context of the stipulation as a whole. The parties agreed that the WOC defendants would guarantee payment of $135,000 to Eitani until such time as Eitani received $200,000 or more from the Simayof defendants. The trial court found that Simayof had paid Eitani only $7,500 in six years. To allow the WOC defendants credits of $7,500 would render the requirement that the guarantee for $135,000 remain in effect until Eitani receive $200,000 a nullity. For this reason, Cohen's claim of entitlement to a $7,500 setoff against the judgment is rejected.

We also reject Cohen's argument that Eitani breached the stipulation by refusing to accept an emerald ring from Simayof in lieu of monetary payments or by returning the $500 payments Simayof tendered while the parties negotiated a possible modification of the payment schedule. The

20

stipulation provides that the WOC defendants' duty to personally guarantee $135,000 arose in July 2015, when WOC received the initial written notice of Simayof's default.  We agree with Cohen's implicit argument that the WOC defendants stood to benefit if Eitani had agreed to modify the payment schedule by accepting the ring or reduced payments because, at that juncture, Simayof would not have been in default.  However, the evidence clearly established that Eitani and Simayof never entered into a written agreement to modify Simayof's payment schedule.  Accordingly, the WOC defendants are not entitled to the benefit of payments, which Simayof tendered, but Eitani was under no duty to receive.

## DISPOSITION

The judgments are affirmed.  Eitani shall recover costs on appeal.

_____
Mayfield, J.*

We concur:

_____
Richman, Acting P.J.


_____
Miller, J.


*Eitani v. Simayof et al.* (A159547)


\* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.